01

02

03

04

05

06

07                          UNITED STATES DISTRICT COURT
                            WESTERN DISTRICT OF WASHINGTON
08                                    AT SEATTLE

09   NORMAN GOTCHER, JR.,            )
                                     )    Case No. 04-2417-TSZ-JPD
10              Plaintiff,           )
                                     )
11        v.                         )
                                     )    REPORT AND RECOMMENDATION
12   KEN RAY, *et al.*,              )
                                     )
13              Defendants.          )
     _____ )

14

15              I.  INTRODUCTION AND SUMMARY CONCLUSION

16        Plaintiff is proceeding pro se and in forma pauperis in this 42 U.S.C. § 1983 civil-rights

17   action against seventeen current and former employees of the King County Correctional

18   Facility.  He alleges that defendants violated his civil rights by beating him, failing to provide

19   adequate notice of an administrative hearing before sending him to disciplinary segregation,

20   failing to provide adequate medical care, and lying to cover up these alleged violations.

21        Defendants deny they violated plaintiff's civil rights and have filed a motion for

22   summary judgment.  Dkt. No. 81.  Plaintiff has filed a fifty-one-page memorandum opposing

23   summary judgment.  Dkt. No. 118.  Having carefully reviewed the parties' papers, supporting

24   materials, and the available record, the Court recommends that defendants' motion for

25   summary judgment be GRANTED IN PART and DENIED IN PART.  With the exception of

26   Sergeant Stewart, all defendants are entitled to summary judgment on all claims.  Plaintiff's

REPORT AND RECOMMENDATION
PAGE -1

01    claims against Sergeant Stewart should proceed and counsel should be appointed on plaintiff's

02    behalf.

03                                   II.  BACKGROUND

04              Plaintiff is a state prisoner who is currently incarcerated at the Monroe Corrections

05    Complex in Monroe, Washington.  This litigation, however, concerns violations of his civil

06    rights, which allegedly occurred while he was held as a pretrial detainee at the King County

07    Correctional Facility in Seattle, Washington (the "Jail"), between January 21, 2004, and June 4,

08    2004.  Dkt. No. 102, Deposition of Norman Gotcher, April 27, 2004, (Gotcher Dep.) at 42-43.

09    Plaintiff's complaint seeks various combinations of monetary damages and declaratory and

10    injunctive relief for a variety of claims against seventeen current and former Jail employees.

11              A.    Events in Plaintiff's Cell and While Being Transported to Segregation.

12              On January 21, 2004, Officer Kristina Hagman booked plaintiff into the Jail.  Dkt.

13    No. 82, Hagman Decl. at ¶ 4.  During booking, a dispute arose between plaintiff and Officer

14    Hagman regarding the manner in which plaintiff's personal property was inventoried.  Id.;

15    Gotcher Dep. at 45.  Plaintiff claims that, after booking, Officer Michelle Helpenstell called him

16    a "nigger" and then escorted him to a holding cell, where he vented his frustration at being

17    jailed by yelling, kicking the toilet, and referring to corrections officers as, among other things,

18    "bastards[.]"  Dkt. No. 26, Complaint at ¶ 23; Gotcher Dep. at 44-48; Hagman Decl. at ¶ 5;

19    Dkt. No. 83, Helpenstell Decl. at ¶ 5; Dkt. No. 118, Pl. Opp. to Sum. J. at 18-19.  Officer

20    Helpenstell determined that these actions violated Jail rules and wrote plaintiff an infraction for

21    the incident.  Helpenstell Decl. at ¶ 6, Attach. A; Gotcher Dep. at 48.  She then determined

22    that plaintiff needed to be moved to administrative segregation pending a hearing on the

23    infraction.  Helpenstell Decl. at ¶ 6.

24              Officer Helpenstell directed plaintiff to turn away from her so that he could be

25    handcuffed for the move.  Helpenstell Decl. at ¶ 7.  The parties disagree as to precisely what

26    occurred next.  Plaintiff did not "want [Officer Helpenstell] touching [him], period," and he

REPORT AND RECOMMENDATION
PAGE -2

01 | told this to Officer Helpenstell. Gotcher Dep. at 58. According to plaintiff, Officer Helpenstell

02 | and three to four other officers then grabbed him without warning, and handcuffed him.[1]

03 | Complaint at ¶ 27-28; Gotcher Dep. at 48-49. His complaint alleges that while handcuffed,

04 | Officers Hagman and Taylor hoisted him off the ground by his handcuffs and, together with

05 | Officer Weaver, "constantly kneed" him on his back and ribs. *Id.* at ¶ 29-31. His complaint

06 | further alleges that Officer Weaver applied a choke-hold to him, and that she and Officers

07 | Hagman, Taylor, and Weaver repeatedly slammed him into the cell wall. *Id.* at ¶ 15, 32-33;

08 | Dkt. No. 77, Second Amended Complaint at 4-5.

09 | Plaintiff's complaint also alleges that Sergeant Stewart pepper-sprayed him during the

10 | struggle, left his cell and rubbed "something" on his hand, and then ran back into his cell and

11 | slammed plaintiff's head with "brutal force." Complaint at ¶ 34-35. According to plaintiff, the

12 | officers continued to kick and slap him while they laughed and made statements such as they

13 | "bet [plaintiff would] be good now." *Id.* at ¶ 37. Plaintiff was given a second infraction for

14 | this incident. Helpenstell Decl. at ¶ 10-12.

15 | Plaintiff also alleges that, while Officers Helpenstell, Taylor, Hagman, and Sergeant

16 | Stewart transported him to administrative segregation, they slammed him into the elevator wall

17 | and continued to taunt him with statements such as, "[w]e can all die in this elevator if this is

18 | what he wants." Complaint at ¶ 41. They then threw him into a cell with "severe pain, . . . a

19 | busted lip, . . . severe headach[e] and burning [eyes.]" *Id.* at ¶ 42. Plaintiff's complaint states

20 | that he never resisted or threatened the officers in any way.[2] *Id.* at ¶ 36-37.

21 | B.    <u>Administrative Hearing and Appeal.</u>

22 | _____

23 | [1]It is not clear whether all of the named officers actually entered his cell. Plaintiff's initial complaint indicates that all five officers did so. Complaint at ¶ 27-28. At his deposition,

24 | however, he stated that "three or four different" officers were involved. Gotcher Dep. at 48-49. Additionally, Officer Hagman's declaration indicates that she was not involved with

25 | plaintiff after he left the booking counter, and thus did not enter his cell. Hagman Decl. at ¶ 4-6.

26 | [2]*But see infra,* Discussion Section C.2.

REPORT AND RECOMMENDATION
PAGE -3

01          On January 25, 2004, an administrative hearing was held at the Jail before Classification

02   Program Specialist Vicki Shumaker to address the two infractions issued in connection with

03   the January 21, 2004, incident.  Dkt. No. 87, Shumaker Decl." at ¶ 4; Gotcher Dep. at 65-68,

04   204-07.  According to plaintiff's complaint, he was never given twenty-four- hour advance

05   notice of the hearing.  Complaint at ¶ 44-53.  Nevertheless, Specialist Shumaker found plaintiff

06   guilty of the two infractions and sentenced him to disciplinary segregation for approximately

07   thirteen days.  Shumaker Decl. at ¶ 4, Attachs. A, B; Dkt. No. 88, Declaration of McKeon

08   Decl. at ¶ 4.  Plaintiff appealed but, after reviewing the record, Classification Program

09   Supervisor James McKeon affirmed both of Ms. Shumaker's decisions.  Gotcher Dep. at 67-

10   68, Exs. 7, 8; McKeon Decl. at ¶ 4, Attachs. A, B.

11          C.    Medical Treatment and Requests for a Medical Transfer.

12          Plaintiff also raises a variety of Eighth Amendment claims against Jail officials and

13   medical staff for their alleged failure to provide him with adequate medical care.  He argues

14   that no one gave him care after the alleged beating and that when he was treated, Dr. Ben

15   Sanders performed a perfunctory examination only.  Complaint at ¶ 58-60; see also Dkt.

16   No. 60, First Amended Complaint.  Plaintiff also alleges that nurses Nicki Behner, Cathy

17   Barber, Carol Sinape and Barbara Krzyzek interfered with and delayed his access to

18   appropriate care outside the Jail.  Complaint at ¶ 80-87, 91.  As a result, plaintiff alleges that

19   his injuries became "more severe and life lasting[.]"  Id. at ¶ 91.

20          In addition, plaintiff argues that former Jail director Kenneth Ray, Mike Velasquez, Dr.

21   Alonzo Plough, former Director of Seattle-King County Department of Public Health,  Nurse

22   Andrew Murphy, and Medical Director Barbara Hanson knew about his injuries, but failed to

23   order that he be transferred to Harborview to receive the treatment he believed he needed.

24   Complaint at ¶ 14-16, 69-76, 80-87.  He argues that these defendants should have known

25   about his alleged ailments, but that they failed to respond to his complaints or take any action

26   to assist him.  Id.  Plaintiff also appears to argue that Messrs. Murphy and Velasquez ignored

REPORT AND RECOMMENDATION
PAGE -4

01  his requests for a transfer and lied to the King County Ombudsman to cover up the Jail's

02  failure to order the medical transfer. *Id.* at ¶ 69-72.

03                                      III.  DISCUSSION

04          A.      Summary Judgment Standard.

05          Summary judgment is appropriate when, viewing the evidence in the light most

06  favorable to the nonmoving party, there exists "no genuine issue as to any material fact" such

07  that "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A

08  material fact is a fact relevant to the outcome of the pending action. *See Anderson v. Liberty*

09  *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Genuine issues of material fact exist when the

10  evidence would enable "a reasonable jury . . . [to] return a verdict for the nonmoving party."

11  *Id.* (internal citations omitted).  In response to a properly supported summary judgment

12  motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings,

13  but must set forth specific facts demonstrating a genuine issue of fact for trial and produce

14  evidence sufficient to establish the existence of the elements essential to his case. *See* Fed. R.

15  Civ. P. 56(e); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  A mere scintilla of

16  evidence, however, is insufficient to create a factual dispute. *See Anderson*, 477 U.S. at 252.

17          When analyzing a pro se litigant's motion for summary judgment, the Court must

18  consider as evidence "all of [a plaintiff's] contentions offered in motions and pleadings, where

19  such contentions are based on personal knowledge and set forth facts that would be admissible

20  in evidence, and where [the plaintiff] attested under penalty of perjury that the contents of the

21  motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir.

22  2004) (collecting cases).  However, a litigant cannot create an issue of fact by contradicting

23  himself in subsequent sworn statements. *Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 266

24  (9th Cir. 1991).  If the Court finds that any such contradiction is a "sham" and not "an honest

25  discrepancy, a mistake, or the result of newly discovered evidence," it may disregard the sham

26  evidence. *Id.* at 266-67.

REPORT AND RECOMMENDATION
PAGE -5

01        B.        Qualified Immunity Standard.

02        Public officials who perform discretionary functions enjoy qualified immunity in a civil

03  action for damages, provided that his or her conduct does not violate clearly established federal

04  statutory or constitutional rights of which a reasonable person would have known.  *Harlow v.*

05  *Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus, qualified immunity "provides ample protection to

06  all but the plainly incompetent or those who knowingly violate the law."  *Burns v. Reed*, 500

07  U.S. 478, 480 (1991).

08        The Supreme Court has established a two-part test for determining whether an official

09  is entitled to qualified immunity.   First, the Court must determine whether the facts, when

10  taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct

11  violated a constitutional right.  *Saucier v. Katz,* 533 U.S. 194, 201 (2001); *Cruz v. Kauai*

12  *County*, 279 F.3d 1064, 1068-69 (9th Cir. 2002).  If a violation is articulated, the Court must

13  ascertain whether the constitutional right at issue was "clearly established" at the time of the

14  alleged violation.  *Saucier,* 533 U.S. at 201; *Cruz,* 279 F.3d at 1069.  The right must be

15  established at more than some abstract level.  *Saucier,* 533 U.S. at 201.  Rather,"[t]he contours

16  of the right must be sufficiently clear that a reasonable official would understand that what he is

17  doing violates that right."  *Id.* at 202 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640

18  (1987)); *see also Cruz,* 279 F.3d at 1069.

19        C.        Claims Against Officers Hagman, Helpenstell, Taylor, and Weaver
                    Should Be Dismissed.
20
21        The Due Process clause protects pretrial detainees from uses of excessive force that

    amount to punishment.  *Gibson v. County of Washoe Nevada*, 290 F.3d 1175, 1197 (9th Cir.
22
    2002) (citing *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)).  The Fourth Amendment
23
    sets the "applicable constitutional limitations" for purposes of analyzing excessive-force claims
24
    by pretrial detainees.  *Id.* (citing *Pierce v. Multnomah County,* 76 F.3d 1032, 1043 (9th Cir.
25
    1996)).  Excessive-force claims by pretrial detainees turn on whether the officers' use of force
26
    was objectively reasonable, given the circumstances.  *Graham*, 490 U.S. at 397.

REPORT AND RECOMMENDATION
PAGE -6

01       To determine whether the officers' use of force was reasonable, the Court must

02 carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment

03 interests against the countervailing governmental interests at stake." *Id.* at 396.  It may

04 consider factors such as whether a detainee posed a threat to the safety of the officers or

05 others,[3] *Id.* at 396, and whether there is any objective medical evidence of an injury.  *See Arpin*

06 *v. Santa Clara Valley Transp. Agency*, 261 F.3d 912 (9th Cir. 2001) (conclusory allegations of

07 injury without factual data or medical evidence insufficient to defeat summary judgment motion

08 in excessive force claim); *cf. Hudson v. McMillian,* 503 U.S. 1, 9-10 (indicating that blows

09 which caused bruises, swelling, and loosened teeth were not de minimis).  The Court's analysis

10 also must be cognizant of the fact that prison officials must be free to take action to ensure the

11 safety of themselves and other inmates, and to ensure security and order within the prison.

12 *Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979).  In the context of Fourth Amendment excessive-

13 force cases, the qualified-immunity analysis is the same as an  analysis on the merits.  *Scott v.*

14 *Henrich*, 39 F.3d 912, 914 (9th Cir. 1994) (internal citation omitted).

15

16               1.     <u>Officer Kristina Hagman is Entitled to Summary Judgment</u>.

17       Plaintiff has failed to demonstrate the existence of a genuine issue of material fact as to

18 Officer Hagman.  Plaintiff's complaint indicated Officer Hagman was one of the officers who

19 entered his cell and beat him.  Complaint at 28-31.  However, Officer Hagman has offered a

20 declaration in support of summary judgment that indicates she did not enter plaintiff's cell, and

21 that her interaction with plaintiff was limited to a brief verbal dispute with him during booking.

22 *See generally* Hagman Decl.

23       Plaintiff's deposition testimony and opposition to summary judgment contradict his

24 complaint and support Officer Hagman's motion for summary judgment.  In his deposition,

25

26         [3]In the context of arrest, other factors include "the severity of the crime at issue, . . . and whether he [wa]s actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396.

REPORT AND RECOMMENDATION
PAGE -7

01  plaintiff offered no testimony as to how Officer Hagman had any involvement with plaintiff

02  after booking or that she participated in the alleged beating in any way.  Gotcher Dep. at 43,

03  121-22.  Moreover, plaintiff conceded in his opposition to summary judgment that his only

04  interaction with Officer Hagman was in connection with his booking.  Pl. Opp. to Sum. J. at 3,

05  21.  He has alleged no constitutional tort during booking.  Plaintiff's contradictory statements

06  indicate his initial allegation was a sham and does not create a genuine issue of material fact as

07  to Officer Hagman.  *Kennedy,* 952 F.2d at 266-67.  Any claims against office Hagman should

08  therefore be dismissed.

09         2.     Officer Michelle Helpenstell is Entitled to Summary Judgment.

10         Plaintiff claims that Officer Helpenstell violated his civil rights by calling him a "nigger"

11  and using other derogatory and threatening language.  The Court does not condone such

12  conduct, if it in fact occurred.[4]  However, threats and verbal harassment generally do not state

13  a claim under 42 U.S.C. § 1983.  *See Gaut v. Sunn,* 810 F.2d 923, 925 (9th Cir. 1987).

14         Additionally, plaintiff has not carried his burden of demonstrating the existence of a

15  genuine issue of material fact as to his excessive-force claims against Officer Helpenstell.

16  Officer Helpenstell has offered a declaration that indicates plaintiff had "shown himself to be a

17  problem" by swearing at her, refusing her orders and resisting handcuffing.  Helpenstell Decl.

18  at ¶ 6-8.  She has also stated that plaintiff was not "choked, slammed, kneed, or yanked up in

19  the air by his wrists once he was handcuffed."  *Id.* at ¶ 9.

20         Although plaintiff denies that he threatened, struck, or otherwise resisted the officers,

21  he has contradicted these assertions repeatedly.  For instance, plaintiff admits that after his

22  dispute with Officer Hagman, he was escorted to a cell where he yelled, kicked the toilet, and

23  referred to the officers as, among other things, "bastards[.]"  Gotcher Dep. at 44-48.  He also

24  admits he directed a "fuck you bitch" and similar language towards Officer Helpenstell.  Opp.

25  to Sum. J. at 20, 23, 49.  He has also acknowledged that he "did not jump to Officer

26  ———————————————

[4]Officer Helpenstell denies using such language.  Helpenstell Decl. at ¶ 5.

REPORT AND RECOMMENDATION
PAGE -8

01 Helpenstell's orders[,]" Opp. to Sum. J. at 34, he told the officers he did not want Officer

02 Helpenstell to touch him, Gotcher Dep. at 49, 57-58, and he struggled against the officers as

03 they attempted to handcuff him.  Opp. to Sum. J. at 5-6, 8, 20-22; Gotcher Dep. at 50-52,

04 57-58.  Plaintiff cannot create a issue of fact by repeatedly contradicting himself within and

05 among his sworn statements.  *Kennedy,* 952 F.2d at 266-67.  Taking the facts in the light most

06 favorable to plaintiff, Officer Helpenstell could have reasonably believed that plaintiff's agitated

07 and obstreperous behavior presented a threat to both the order in the Jail and to her own safety

08 and that it was necessary for her and the other officers assisting her in handcuffing and

09 transporting plaintiff to use force.

10       The fact that plaintiff sustained no documented physical injury of any consequence

11 indicates Officer Helpenstell's use of force was reasonable.  Although plaintiff claims he

12 received no medical care until approximately thirty days after the incident, he has contradicted

13 this assertion as well.  Aff. In Support of Opp. to Sum. J. at 3.  Medical records from

14 January 26, 2004, show Nurse Jimmy Andrews conducted an examination that revealed "[no]

15 bruising or swelling or any other visible injury on [plaintiff's] wrists," nor any injuries to his

16 eyes.  Dkt. No. 90, Andrews Decl. at ¶ 4, Attach.  Plaintiff indicated to Nurse Andrews that he

17 did not have "that much pain," and he refused over-the-counter pain medication.  *Id*. at Attach.

18 An exam by Dr. Sanders on February 4, 2004, similarly "revealed no acute abnormalities in

19 [plaintiff's] eyes[,]" nor any other injuries that warranted treatment.  Dkt. No. 91, Sanders

20 Decl. at ¶ 7.  More recently, a July 20, 2004, eye examination at Harborview revealed that

21 plaintiff's eyes were "essentially normal[.]"[5]  Dkt. No. 117, Second Declaration of Legin Davor

22

23       [5]Plaintiff has submitted a July 22, 2004, letter from Harborview that indicates an

24 examining physician had concerns about plaintiff's retina and that he was scheduled for a
second appointment on July 28, 2004.  Opp. to Sum. J. at Ex. 47.  This letter concerns an

25 examination six months after the incident and offers no opinion as to the precise nature or
cause of the condition.  *Id*.  It is therefore insufficient to rebut defendants' motion.  It also

26 supports defendants' motion as it applies to plaintiff's medical claims because it demonstrates
defendants had in fact scheduled plaintiff for outside care at Harborview.  *See infra* §§ I and J.

REPORT AND RECOMMENDATION
PAGE -9

01   at 226.  Together with the fact that the incident lasted approximately one minute, Helpenstell

02   Decl. at ¶ 9, the medical evidence submitted indicates the force used by Officer Helpenstell was

03   reasonable in light of plaintiff's actions.  Summary judgment should therefore be granted.

04                    3.    Officer Michael Taylor is Entitled to Summary Judgment.

05           Officer Taylor is entitled to summary judgment.  Plaintiff has alleged that after he had

06   been handcuffed, Officer Taylor kneed him in his back and yanked him off the ground.

07   Complaint at 29-33, 41-43; Gotcher Dep. at 128-30.  He also alleges that Officer Taylor

08   continued to rough him up and make veiled threats against him on the way to segregation.

09   Complaint at 41; Gotcher Dep. at 125-30.

10           In his declaration in support of summary judgment, Officer Taylor has stated that he

11   has no recollection of the incident with plaintiff.  Dkt. No. 86, Taylor Decl. at ¶ 4.  He has

12   indicated, however, that he would recall if "any officers choked, slapped, kneed, threatened,"

13   or committed the other acts alleged by plaintiff.  *Id*. at ¶ 5.  He has unequivocally stated that

14   "[t]hese events did not occur."  *Id*.  Although plaintiff's opposition questions the reliability of

15   Officer Taylor's memory, it does not rebut his affidavit and offers no evidence as to how

16   Officer Taylor violated his civil rights.  In response to a properly supported summary judgment

17   motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings,

18   but must set forth specific facts demonstrating a genuine issue of fact for trial, and produce

19   evidence sufficient to establish the existence of the elements essential to his case.  *Celotex*, 477

20   U.S. at 323 (1986).  Plaintiff has failed to adduce evidence sufficient to defeat Officer Taylor's

21   motion for summary judgment.

22                    4.    Officer Randy Weaver is Entitled to Summary Judgment.

23           In his complaint, plaintiff has alleged that Officer Weaver participated in violating his

24   civil rights by, among other things, kneeing him and slamming him into a cell wall after he had

25   been handcuffed.   Complaint at ¶ 29-31.  He further alleges that Officer Weaver applied a

26   choke-hold to him.  *Id*. at ¶ 32-33; Second Amended Complaint at 4-5.  Officer Weaver has

REPORT AND RECOMMENDATION
PAGE -10

01  offered a declaration, which indicates that neither he, nor the other officers "choked, slapped,

02  kneed, threatened or tossed plaintiff, or yanked his cuffed arms up from behind." Dkt. No. 85,

03  Weaver Decl. at ¶ 5-6.  Plaintiff did not address this allegation at his deposition[6] and, other

04  than to generally impugn Officer Weaver's credibility, has offered no evidence against Officer

05  Weaver's declaration and motion for summary judgment.  As discussed above, a party may not

06  rely simply upon allegations in pleadings to resist a motion for summary judgment.  Claims

07  against Officer Weaver should therefore be dismissed.

08        D.   <u>Genuine Issues of Material Fact Exist That Preclude Summary Judgment as to Sergeant Stewart.</u>

09

10  According to plaintiff, Sergeant Stewart left his cell after plaintiff had been handcuffed,

11  sprayed pepper foam into his hand, rushed back into the cell, and violently struck plaintiff's

12  face, knocking his head against the wall.  Complaint at ¶ 34-35.  Sergeant Stewart admits that

13  he "applied one short burst" of pepper foam, but denies that he sprayed anything in his hand

14  and slammed it in plaintiff's face.  Dkt. No. 84, Stewart Decl. at ¶ 5.  He also denies that he or

15  any other officer "choked, slammed, slapped or kneed, or yanked [plaintiff] up in the air by his

16  wrists once he was handcuffed." *Id.*; Helpenstell Decl. at ¶ 8; Taylor Decl. at ¶ 5.

17  Unlike plaintiff's excessive-force claims against the other officers, plaintiff has

18  presented evidence sufficient to raise a genuine issue of material fact as to Sergeant Stewart.

19  In his deposition, plaintiff consistently reiterated his claim against Officer Stewart and has done

20  so again in his opposition to the defendants' motion for summary judgment.  Opp. to Sum. J. at

21  34; Dkt. No.118, Attach 1, Affidavit In Supp. of Sum. J. at 3; Gotcher Dep. at 134-35.

22  Finding that a genuine issue of material fact exists does not equate to a finding that Sergeant

23  Stewart did, in fact, engage in the activity he is alleged to have committed.  However, even if

24  plaintiff had been disruptive and had struggled against the officers, slamming pepper foam into

25  plaintiff's face after he had already been pepper-sprayed, subdued, and handcuffed cannot be

26      [6]Plaintiff did indicate that Officers Helpenstell, Hagman, Taylor, and Stewart were not responsible for choking him.  Gotcher Dep. at 136.

REPORT AND RECOMMENDATION
PAGE -11

01  said to be reasonable.  Rather, such action, if true, is one of the "[g]ratuitous and completely

02  unnecessary acts of violence . . . [that] violate the Fourth Amendment . . . [even without]

03  serious or permanent injury [as] a prerequisite[.]"  *Fontana v. Haskin*, 262 F.3d 871, 880 (9th

04  Cir. 2001).  In light of the fact that both parties have submitted contradictory evidence as to

05  whether this occurred, summary judgment should not be granted.

06          E.      The Disciplinary Hearing Claims Should be Dismissed.

07          Plaintiff claims that Ms. Shumaker violated his due process rights by failing to give him

08  at least twenty-four-hours' notice that he would have a disciplinary hearing to determine

09  whether to place him in disciplinary segregation.  Complaint at ¶ 44, 48-51.  He further argues

10  that Mr. McKeon violated his due process rights by affirming Ms. Shumaker's decision.  *Id*. at

11  ¶ 46-47, 52.  These defendants, however, are entitled to summary judgment on the basis of

12  qualified immunity.

13          Pretrial detainees must be given at least twenty-four hours' written notice of charges

14  pending against them before a hearing can be held to impose disciplinary action.  *Wolff v.*

15  *McDonnell*, 418 U.S. 539, 564 (1974); *see also Mitchell v. Dupnik*, 75 F.3d 517, 525 (9th Cir.

16  1996) (noting that *Wolff* sets forth the due process elements of prison disciplinary

17  proceedings).  Here, plaintiff has indicated in his complaint, deposition, and response to

18  summary judgment that he was not given twenty-four-hour notice of the proceeding.  Hence,

19  taking the facts in plaintiff's complaint in the light most favorable to him, he has articulated a

20  violation of his due process rights.

21          Plaintiff, however, has not shown that Ms. Shumaker and Mr. McKeon knew or should

22  have known that their actions violated plaintiff's constitutional rights.  According to

23  Ms. Shumaker, plaintiff told her at his disciplinary hearing that he had received twenty-four-

24  hour notice of the hearing.  Shumaker Decl. at ¶ 5.  Even if plaintiff actually had less than

25  twenty-four hours' notice, as alleged, plaintiff signed a form at the hearing, which indicates he

26  "received cop[ies] of the infraction[s and] 24 hrs. to prepare for the hearing."  *Id*. at Attachs.

REPORT AND RECOMMENDATION
PAGE -12

01  A, B. Officer Helpenstell's infraction report also indicates that it was delivered to plaintiff the

02  day of the incident. *Id.* at Attach A. Ms. Shumaker's good-faith reliance on this evidence to

03  render her decision was therefore reasonable and she is entitled to qualified immunity regarding

04  this claim.

05       Mr. McKeon's actions were also reasonable. Mr. McKeon reviewed Ms. Shumaker's

06  decision, the infraction reports, as well as the forms on which plaintiff acknowledged receipt of

07  the charges at least twenty-four hours in advance. McKeon Decl. at ¶ 4. Although plaintiff

08  argued to Mr. McKeon that he had not had such notice, in light of the foregoing facts, Mr.

09  McKeon's conclusion to the contrary cannot be said to be unreasonable. Plaintiff's claim

10  against Mr. McKeon should also be dismissed on the basis of qualified immunity.[7]

11       F.    Claims Against the Nurses Should Be Dismissed.

12       Plaintiff alleges that nurses Nicki Behner, Cathy Barber, Carol Sinape, and Barbara

13  Krzyzek violated his Eighth Amendment rights by interfering with and delaying his access to

14  health care outside the Jail. Complaint at ¶ 77-91. As a result, plaintiff alleges that his injuries

15  became "more severe and life lasting[.]" *Id.* at ¶ 91. Defendants deny they rendered

16  inadequate care and argue that they are entitled to summary judgment on the grounds of

17  qualified immunity. Mtn. for Sum. J. at 15-17.

18       The Due Process clause affords pretrial detainees at least the same level of medical care

19  as that required by the Eighth Amendment. *Gibson*, 290 F.3d at 1187. Denial, delay of, or

20  interference with access to medical treatment can constitute "deliberate indifference" in

21  violation of the Eighth Amendment. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en

22  banc); *see also Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986) (citing *Estelle v.*

23

24  _____

25       [7]In his response to defendants' motion for summary judgment, plaintiff raises new
    arguments, including that his hearings should have been taped and that he was prevented from
    calling witnesses. Opp. to Sum. J. at 13. These claims were not timely raised in any of
26  plaintiff's numerous pleadings and motions and need not be considered here. *See M/V*
    *American Queen v. San Diego Marine Const. Corp.,* 708 F.2d 1483, 1492 (9th Cir. 1983).

REPORT AND RECOMMENDATION
PAGE -13

01 *Gamble*, 429 U.S. 97, 106 (1976)).  To prevail on such a claim, plaintiff must show that the

02 alleged delay was "harmful" or that it led to further injury.  *McGuckin v. Smith*, 974 F.2d 1050,

03 1060 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d

04 1133 (9th Cir. 1997) (en banc).  However, negligent treatment or diagnosis does not violate

05 the Eighth Amendment.  *Estelle*, 429 U.S. at 106; *Lopez*, 203 F.3d at 1131.  A mere

06 disagreement with a treatment provider does not give rise to an Eighth Amendment claim.  *See*

07 *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

08        Nurses Behner, Barber, Sinape, and Krzyzek are entitled to qualified immunity.  Nurses

09 Behner and Barber have indicated that they had no direct or indirect role in plaintiff's transfer

10 or treatment.  Dkt. No. 96, Barber Decl. at ¶ 4; Dkt. No. 97, Behner Decl. at ¶ 2-4.   No

11 records before the Court support a contrary conclusion.  Accordingly, these claims should be

12 dismissed.

13        Nurse Sinape has indicated that she treated plaintiff for complaints relating to his vision

14 and determined that his eyeglass prescription was inadequate.  Dkt. No. 92, Sinape Decl. at ¶

15 6.  Because of his complaints regarding his vision, Nurse Sinape scheduled plaintiff for an eye

16 examination at Harborview.  *Id.*; Gotcher Dep. at 175; Opp. to Sum. J. at Exs. 47-49.

17 Similarly, Nurse Krzyzk examined plaintiff for complaints regarding his finger, back, and

18 mental health, but she had no authority to transfer plaintiff to Harborview, and denies ever

19 making any promises that she would do so.  Dkt. No. 93, Krzyzk Decl. at ¶ 4-7.  Plaintiff's

20 allegations notwithstanding, he has offered no evidence to rebut the foregoing declarations and

21 support his allegations that these nurses rendered inadequate care and interfered with, denied,

22 or otherwise violated his Eighth Amendment rights.  Claims against Nurses Sinape and Kryzk

23 should therefore be dismissed.

24        G.     The Claim Against Dr. Alonzo Plough Should be Dismissed.

25        Plaintiff argues that former Director of Seattle-King County Department of Public

26 Health, Dr. Alonzo Plough, knew about his injuries, but failed to order appropriate treatment

REPORT AND RECOMMENDATION
PAGE -14

01 | or adequately respond to his complaints.  Complaint at ¶ 80-87.  Dr. Plough, however, is

02 | entitled to summary judgment because plaintiff has not shown that he participated in any

03 | violation of his civil rights.      In order to state a claim for relief under 42 U.S.C. § 1983, a

04 | plaintiff must assert that he suffered a violation of rights protected by the Constitution or

05 | created by federal statute, and that the violation was proximately caused by a person acting

06 | under color of state or federal law.  *See Crumpton v. Gates,* 947 F.2d 1418, 1420 (9th Cir.

07 | 1991); *see also WMX Technologies, Inc. v. Miller*, 197 F.3d 367, 372 (9th Cir. 1999) (en

08 | banc).  Section 1983 liability arises only upon a showing that defendants personally participated

09 | in violating plaintiff's civil rights.  Respondeat superior liability will not support § 1983 liability

10 | unless plaintiff demonstrates that a supervisor participated in the violations, directed the

11 | violations, or knew about the violations and did nothing to prevent them.  *Taylor v. List*, 880

12 | F.2d 1040, 1045 (9th Cir. 1989) (internal citation omitted); *see also Mabe v. San Bernardino*

13 | *County Dep't of Pub. Soc. Serv.*, 237 F.3d 1101, 1109 (9th Cir. 2001).

14 |          The basis for Dr. Plough's motion for summary judgment is that during his tenure at

15 | King County, he had no involvement in plaintiff's care.  Mtn. for Sum. J. at 17.  The defense

16 | has submitted a declaration that indicates Dr. Plough "did not make decisions as to who would

17 | or would not be referred to outside health care providers[.]"  Dkt. No. 99, Werlech Decl. at

18 | ¶ 4.  There is no evidence that Dr. Plough ever knew of plaintiff's request for outside medical

19 | care, that he promised such care would be provided, or that he thwarted the delivery of such

20 | care.  *Id*.  Plaintiff admitted in his deposition that he had no direct contact with Dr. Plough and

21 | that Dr. Plough never promised him anything.  Gotcher Dep. at 190-93.  Moreover, even if Dr.

22 | Plough knew that plaintiff was seeking outside medical care, plaintiff has, at best, alleged that

23 | Dr. Plough declined to order the transfer.  This is insufficient.  *See Jackson*, 90 F.3d at 332

24 | (indicating that a difference of opinion as to proper course of treatment does not rise to the

25 | level of deliberate indifference to serious medical needs).  Finally, as discussed above, plaintiff

26 | has adduced no evidence which suggests he actually had any serious medical needs.  Plaintiff's

REPORT AND RECOMMENDATION
PAGE -15

01  claim against Dr. Plough should therefore be dismissed.

02         H.    <u>The Claim Against Kenneth Ray Should be Dismissed</u>.

03         Plaintiff argues that former Jail Director Kenneth Ray knew about his injuries, but failed

04  to respond to his grievances or order appropriate treatment.  Complaint at ¶ 80-87.  Mr. Ray,

05  however, was not employed by the Jail during the period at issue in this lawsuit.  He was the

06  Director of King County Department of Juvenile and Adult Detention from August 26, 2004,

07  to January 28, 2005.  Dkt. No. 100,  Nelson Decl. at ¶ 2-3.  Plaintiff's complaint concerns

08  events that allegedly occurred between January 21, 2004, and June 4, 2004.  Gotcher Dep. at

09  42-43.  Indeed, plaintiff conceded at his deposition that he thought such promises had been

10  made, but that he did not actually know that to be the case.  Gotcher Dep. at 197-99.  Claims

11  against Mr. Ray should be dismissed.

12         I.    <u>The Claim Against Dr. Ben Sanders Should be Dismissed</u>.

13         Plaintiff argues that Dr. Ben Sanders violated his Eighth Amendment rights by

14  performing a perfunctory medical examination only and rendering insufficient care.  Complaint

15  at ¶ 58-60; Second Amended Complaint.  He seeks damages and an injunction that orders Dr.

16  Sanders to turn over his medical files and to recommend he be immediately transported to

17  Harborview for appropriate care.  Second Amended Complaint.  Dr. Sanders has moved for

18  summary judgment, arguing that he provided constitutionally proper care and that he is entitled

19  to qualified immunity.  Mtn. for Sum. J. at 15-17.

20         Because plaintiff is suing Dr. Sanders in his official capacity and is seeking, among

21  other things, injunctive and declaratory relief, qualified immunity is not available to him.

22  *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1482 (9th Cir. 1993); *see also Los Angeles*

23  *Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th Cir. 1993).  Nevertheless,

24  plaintiff is entitled to summary judgment.  A difference of opinion between an inmate and

25  doctor regarding a diagnosis or course of treatment does not rise to the level of "deliberate

26  indifference" for purposes of an Eighth Amendment violation.  *Jackson*, 90 F.3d at 332.  Even

REPORT AND RECOMMENDATION
PAGE -16

01  negligence in diagnosing or treating an inmate's medical condition does not state an Eighth

02  Amendment claim. *Lopez*, 203 F.3d at 1131.

03         Plaintiff can make no showing that Dr. Sanders's treatment was constitutionally

04  deficient.  Aside from plaintiff's unsupported allegations, no medical records or other evidence

05  before the Court suggest Dr. Sanders's treatment and diagnosis were constitutionally deficient

06  in any way.[8]  Rather, plaintiff's complaint essentially turns on his unsupported and subjective

07  belief that Dr. Sanders's evaluation was somehow inadequate.  Such conclusory and unfounded

08  allegations fail as a matter of law and are insufficient to defeat Dr. Sanders's motion for

09  summary judgment.  *See T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n.*,

10  809 F.2d 626, 630-31 (9th Cir. 1987).

11         J.      The Claim Against Barbara Hanson Should be Dismissed.

12         Plaintiff alleges that Barbara Hanson violated his Eighth Amendment rights by denying

13  his requests to transfer him to Harborview in order to obtain the treatment he believed he

14  "needed."  Complaint at ¶ 73-79, 91-93.  He also suggests Ms. Hanson should have supervised

15  her staff better.  *Id.*  Defendant argues that she is entitled to summary judgment because

16  plaintiff cannot show she provided constitutionally-inadequate medical care.  Mtn. for Sum. J.

17  at 15-17.

18         Plaintiff's claims against Ms. Hanson turn on her alleged failure to supervise Jail Health

19  staff in a manner plaintiff believes would have ensured that he would be transferred to

20  Harborview.  However, respondeat superior liability will not support § 1983 liability unless

21  plaintiff demonstrates that a supervisor participated in the violations, directed the violations, or

22  knew about the violations and did nothing to prevent them.  *Taylor*, 880 F.2d at 1045.  Even if

23  Ms. Hanson knew that plaintiff wanted outside care, he has, at best, argued only that he

24  disagrees with Ms. Hanson's decision.  He has not shown that he actually received

25  ───────────────

26         [8]Plaintiff has provided records that indicate he was scheduled for an appointment at
       Harborview in July 2004 to follow-up on an earlier eye exam, but these notes do not indicate
       Dr. Sanders's examination was inadequate. Resp. To Sum. J., Exs. 47-49.

REPORT AND RECOMMENDATION
PAGE -17

01  constitutionally-deficient medical care.  This claim therefore does not rise to the level of a

02  constitutional violation, *Jackson*, 90 F.3d at 332, and is insufficient to carry plaintiff's burden

03  on summary judgment.  *See T.W. Electrical Service, Inc.*, 809 F.2d at 630.

04          K.      The Claim Against Andrew Murphy Should be Dismissed.

05          Plaintiff alleges that Andrew Murphy failed to transfer him to Harborview and that he

06  lied to the King County Ombudsman about following-up with the request.  Complaint at ¶ 69-

07  72.  He apparently argues that defendant failed to send his medical grievances to the proper

08  parties.  Gotcher Dep. at. 137-40.  Defendant denies these allegations and has moved for

09  summary judgment.

10           In a declaration in support of summary judgment, Mr. Murphy has stated that he is an

11  HIV/AIDS social worker at the Jail and has "no direct or indirect role in providing health care

12  to inmates, except as their health care needs might relate to HIV/AIDS issues."  Dkt. No. 98,

13  Murphy Decl. at ¶ 1.  He has no role in responding to inmate grievances, nor any

14  responsibilities relating to the transfer of prisoners.  *Id.* at ¶ 3.  More to the point, he has

15  "never had any direct or indirect contact with plaintiff."  *Id.*  Plaintiff admitted in his deposition

16  that he never had any contact with Mr. Murphy.  Gotcher Dep. at 136.  Claims against

17  defendant Murphy should be dismissed.

18          L.      The Claim Against Michael Velasquez Should be Dismissed.

19          Plaintiff alleges that Michael Velasquez failed to transfer him to Harborview and that he

20  lied to the King County Ombudsman about following-up with the request.  Complaint at ¶ 69-

21  72.  Like his claims against Mr. Murphy, plaintiff argues that Mr. Velasquez failed to send his

22  medical grievances to the proper parties.  Gotcher Dep. at 137-40.  Defendant denies these

23  allegations and has moved for summary judgment.

24          Mr. Velasquez is not liable by virtue of his supervisory role over other health staff

25  because, as discussed above, plaintiff has not produced evidence that any Jail health staff

26  violated his civil rights.  Hence, Mr. Velasquez could not have known of such violation and

REPORT AND RECOMMENDATION
PAGE -18

01   failed to act.  *Taylor*, 880 F.2d at 1045.  Even if plaintiff's constitutional medical rights had

02   been violated, Mr. Velasquez did not, as plaintiff alleges, ignore his requests for assistance.  To

03   the contrary, Mr. Velasquez has indicated that he responded to a grievance from plaintiff on

04   May 30, 2004, and assured him that he had been scheduled for an appointment at Harborview.

05   Dkt. No. 95,  Velasquez Decl. at ¶ 6, Attachs.  He also informed the Ombudsman of the

06   pending appointment.  *Id.* at ¶ 4.  Despite his allegations against Mr. Velasquez to the contrary,

07   plaintiff has acknowledged knowing he had an appointment.  Opp. to Sum. J. at Exs. 47-49.

08   Claims against Mr. Velasquez should therefore be dismissed.

09        M.     <u>Miscellaneous Motions</u>.

10        In conjunction with defendants' motion for summary judgment, several other motions

11   relating to the motion have been filed by the parties.

12        Defendants have moved to strike certain materials submitted by plaintiff.  Dkt. No. 115,

13   Reply in Support of Sum. J. at 2.  Defendants were served with plaintiff's opposition to

14   summary judgment and supporting materials.  At the same time, plaintiff submitted his

15   opposition and supporting materials to the Court.  Because of the volume of documents

16   plaintiff submitted to the Court, the Clerk of the Court entered a docket entry that the items

17   were available at the Clerk's Office in paper format.  Although most of these documents are

18   referred to in plaintiff's motions, they are misnumbered and extremely difficult to identify.

19   Defendants object to the Court considering any materials inconsistent with what they received.

20   Reply in Support of Sum. J. at 2.  It does not appear that the documents on file with the

21   Clerk's Office are different from those served on the defendants, nor that this decision relies

22   upon any documents not submitted to defendants.  Defendants' motion is DENIED.

23        Defendants have moved to strike documents plaintiff refers to as "King County

24   Ombudsman Case Report" because they are unsworn statements.  Reply in Support of Sum. J.

25   at 2.  This motion is GRANTED.  This decision has not relied on those statements.

26        Defendants have moved to strike any new or additional claims raised by plaintiff for the

REPORT AND RECOMMENDATION
PAGE -19

01  first time in his opposition to summary judgment. Reply in Support of Sum. J. at 4 n.2.

02  Defendants refer specifically to contentions raised in plaintiff's opposition to summary

03  judgment that defendants failed to follow proper procedures for filing reports. *Id.* Plaintiff's

04  papers have varied wildly in their descriptions of fact and articulation of legal claims. The

05  Court recognizes that plaintiff's papers have raised new and different issues at various later

06  stages of this matter. *See, e.g., infra* n.8. To the extent plaintiff has raised any such claims,

07  defendants' motion is GRANTED. This decision has not considered any issues not properly

08  raised in plaintiff's complaints.

09      Plaintiff has filed several "motions" since defendants' reply to his opposition to

10  summary judgment. *See, e.g.,* Dkt. Nos. 120-121, 125-127. Although they are unclear,

11  plaintiff appears to have attempted to supplement the record because he believed that the Court

12  did not receive his materials in support of summary judgment. The Court has indicated several

13  times that the materials were received. Dkt. Nos. 119, 122. These motions are DENIED.

14      Plaintiff has raised a variety of "objections" against defendants for allegedly filing

15  "malicious" and "frivolous" motions and for attempting to deceive the Court.[9] Dkt. Nos. 125-

16  27. He has requested that the Court sanction defendants. These motions are without merit

17  and are DENIED. Plaintiff has expressed concern that the Court has considered testimony that

18  was previously ordered stricken. Plaintiff is advised that the testimony stricken by the Court's

19  June 22, 2005, order (Dkt. No. 70) has not been considered by the Court in this decision.

20                          IV.  CONCLUSION

21      For the reasons discussed above, the Court recommends that defendants' motion for

22  summary judgment should be granted as to all defendants but Sergeant Stewart. The Court

23  also recommends that plaintiff should be permitted to pursue his § 1983 claim against this

24  defendant, and counsel should be appointed for plaintiff in anticipation of trial.

25  _____

26          [9]Although plaintiff's writing style makes it difficult to determine the precise nature of
    these "objections," most of them appear to consist of disagreements with defendants' legal
    arguments and their characterization of the facts.

REPORT AND RECOMMENDATION
PAGE -20

01      DATED this 13th day of January, 2006.

02

03                                              *James P. Donohue*

04                                              JAMES P. DONOHUE
                                                United States Magistrate Judge

05

06

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION
PAGE -21