UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NORMAN GOTCHER, Jr., <br><br> Plaintiff, <br><br> v. <br><br> OFFICER: HELPENSTELL, M.L./C./o ET AL., <br><br> Defendants. | No. C04-2417Z <br><br> ORDER |

This matter comes before the Court on a Report and Recommendation ("R&R") issued by Magistrate Judge Donohue regarding Defendants' motion for summary judgment. R&R, docket no. 128; Defs.' Summ. J. Mot., docket no. 81. Plaintiff Norman Gotcher, Jr. brings 42 U.S.C. § 1983 claims alleging that his constitutional rights were violated by 17 individuals employed by the King County Correctional Facility ("Defendants"). Plaintiff alleges: (1) Fourth Amendment violations by several King County officers for "beating him" just after he was booked into jail; (2) Fourteenth Amendment procedural due process violations that occurred when he was found guilty of two jail infractions without the requisite 24-hours notice; and (3) Eighth Amendment violations by various medical officials working at the Correctional Facility for failure to provide adequate medical care after he was injured by the officers. Amend. Compl., docket no. 77. The Magistrate Judge recommended

ORDER 1–

granting summary judgment as to all but one Defendant, Sergeant Stewart, who is alleged to have used excessive force while the officers were restraining Plaintiff. R&R, at 11-12. Having reviewed objections to the R&R by Defendants King County and Sergeant Stewart, docket no. 129, as well as Plaintiff's objections, docket no. 130, the Court hereby adopts the R&R with the following modifications.

**Background**

General Allegations Against Corrections Officers

      Plaintiff states that Officer Helpenstell, Officer Taylor, Officer Weaver, and Sergeant Stewart all entered his cell on January 21, 2004, and used excessive force in subduing, handcuffing, and transporting him to another cell. Gotcher Aff., docket no. 118, at 2, 6-7. In his deposition, Plaintiff stated:

> The officers was roughing me and kneeing me and all this type of stuff and yanking me up off the floor with the handcuffs on, and the handcuffs was real tight, and the other guy's choking me, so there wasn't too much I could do but try and use my head. Docket no. 102, at 51.

> [The officers were] constantly turning my head away and doing what they was doing and kneeing me and slapping me upside my head and all type of crazy stuff, you know. Id., at 53.

> I was taken on the elevator. That's when they begin to rough me up again . . . I was nearly knocked unconscious . . . [b]ecause they was slamming me up against the elevator. Id., at 55.

> [The officers] took the handcuffs that's behind you and they lift you and push you all up against the elevator walls, stuff like that . . . . [T]hey just kept roughing me up against the elevator walls and slammed me up against the elevator wall, and then they made a comment, and after they started laughing, "ha, ha, ha, ha. I'll bet you he'll learn." Id., at 55-56.

> So then they picked me up I believe by both my arms and my legs and tossed me in there like they hogtie hogs . . . . [T]hey flinged me . . . [in] the cell on the 11th floor. Id., at 60.

      Plaintiff also made several statements regarding the actions of the individual officers that were involved in the incident.

ORDER   2–

Officer Helpenstell

In addition to the statements listed above, Plaintiff states that Officer Helpenstell "participated in the slamming of [him] against the wall and the slapping upside the head and the kicking and everything else." Id., at 116.  More specifically, Plaintiff states that "[b]y pushing [him] and slamming [his] head up against the wall, she helped caused the injuries to [his] vision." Id., at 119.  Plaintiff states that Officer Helpenstell "touched [his] face, the side of [his] head, and slammed [him] against the wall." Id.

Officer Taylor

Plaintiff states that Officer Taylor "grabbed [him] by [his] arms" and "twisted [his] arms." Id., at 125.  He further states that Officer Taylor "started slamming [him] against the wall *after they got the handcuffs* on him" and that Plaintiff's face, chest, left shoulder, and "whole front part of [his] body" hit the wall. Id., at 126-27 (emphasis added).  Plaintiff states that Officer Taylor was "kneeing [him] in [his] side . . . by [his] kidneys." Id., at 128.  Finally, Plaintiff states that Officer Taylor "lift[ed] [him] off [his] feet . . . [b]y yanking [his] arms backwards – upwards" and that he was "basically" dangling in mid-air. Id., at 129.

Officer Weaver

Based on the excerpts in the record, the Defendants' did not question Plaintiff regarding the actions of Officer Weaver during Plaintiff's deposition.  Plaintiff's affidavit is also devoid of any statements regarding the specific actions of Officer Weaver.  Accordingly, Plaintiff relies exclusively on the general allegations listed above.  For his part, Officer Weaver states:

> I recall being in a holding cell with Officer Helpenstell and plaintiff, at which time Officer Helpenstell placed her hand on plaintiff's shoulder in the process of preparing to handcuff him.  Plaintiff immediately and forcibly turned toward Officer Helpenstell in a threatening manner, resisting her efforts to cuff him.  I recall we were able to get plaintiff handcuffed and under control only after he was pepper sprayed.  I would recall if I or any other officers choked, slapped, kneed, threatened, or tossed plaintiff, or yanked his cuffed arms up from behind.  These events did not occur.

Weaver Decl., docket no. 85, at ¶¶ 5-6.

ORDER  3–

Sergeant Stewart

Plaintiff states that, after he was handcuffed and had been sprayed once with pepper foam by Sergeant Stewart, Sergeant Stewart "ran out of [his] cell, and then he rubbed something into the palm of his hands, and then he came back and slammed it all into [his] face like that and bumping my head up and busted my lip and stuff." Gotcher Dep., at 51; see also id., at 134-35. Plaintiff further stated that when Sergeant Stewart hit him, Plaintiff's "head hit against the concrete real hard, and it jarred [his] vision." Id. at 53. The Magistrate Judge concluded that these statements precluded summary judgment as to Sergeant Stewart.

**Discussion**

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the opposing party must show that there is a genuine issue of fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party must present significant and probative evidence to support its claim or defense. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). For purposes of this motion, reasonable doubts as to the existence of material facts are resolved against the moving parties and inferences are drawn in the light most favorable to the opposing party. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

The familiar two-part inquiry for qualified immunity is as follows: (1) whether the facts—resolving all disputes of credibility and inferences in favor of the plaintiff—demonstrate that plaintiff's constitutional rights were violated; and (2) if plaintiff's constitutional rights were violated, whether a reasonable officer would recognize that his or her conduct violates those rights under the circumstances and in light of the law that existed at the time. Saucier v. Katz, 533 U.S. 194, 201 (2001).

ORDER   4–

1    The Due Process clause and the Fourth Amendment protect pretrial detainees from
2 uses of excessive force. <u>Gibson v. County of Washoe Nevada</u>, 290 F.3d 1175, 1197 (9th
3 Cir. 2002) (citations omitted). An excessive force claim turns on whether the use of force
4 was objectively reasonable under the circumstances. <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386,
5 395 n.10 (1989). The "reasonableness" of any particular action must be assessed by
6 balancing the nature and quality of the action against the degree of intrusion on the
7 individual's Fourth Amendment interests. <u>Id.</u> at 396. Relevant factors include the threat of
8 safety to the state actor, whether the individual was actively resisting arrest, and the
9 availability of objective medical evidence to support the claim. <u>Id.</u>

10   Here, when all "disputes of credibility and inferences" are resolved in Plaintiff's
11 favor, he may well be able to demonstrate that his constitutional rights were violated by
12 Officer Helpenstell, Officer Taylor, and Sergeant Stewart. Plaintiff has stated that each of
13 these individuals used excessive force after he was handcuffed and in the control of two or
14 more officers. Plaintiff states that Officer Helpenstell slammed his head up against the wall,
15 causing injuries to his vision. As to Officer Taylor, Plaintiff states that he slammed his
16 whole body against the wall, kneed him in the kidneys and helped lift him up off the ground,
17 dangling him by his hands or arms in the air. Plaintiff states that, after he had been sprayed
18 once with pepper foam and was in handcuffs, Sergeant Stewart ran back into his cell and
19 slapped him in the face with what Plaintiff believed to be a hand full of pepper foam.
20 Plaintiff also states that this caused him to hit his head against the concrete wall, breaking his
21 lip. Finally, Plaintiff states that this type of force continued in the elevator during his
22 transport to administrative segregation and included being thrown onto the floor in his cell,
23 knocking him unconscious. Simply put, Plaintiff has demonstrated that such alleged actions
24 by Officer Helpenstell, Officer Taylor, and Sergeant Stewart, if they occurred, were not
25 objectively reasonable under the circumstances and that a reasonable officer would have
26 recognized that such actions were a violation of Plaintiff's constitutional rights at the time.

ORDER  5–

In contrast, because Plaintiff has provided no specific evidence concerning the actions of Officer Weaver, as the Magistrate Judge correctly concluded, Officer Weaver's motion for summary judgment must be granted. See Celotex, 477 U.S. at 323 (non-moving party may not rest upon mere allegations or denials in the pleadings).

**Conclusion**

(1) Based on the foregoing, the Court MODIFIES the R&R as follows: In addition to Sergeant Stewart, Defendants' motion for summary judgment, docket no. 81, is DENIED as to Officer Helpenstell and Officer Taylor. The Court adopts all other aspects of the R&R, docket no. 128, without modification.

(2) The motion for summary judgment, docket no. 81, is GRANTED as to Defendants Kristina Hagman, Randy Weaver, Vicki Shumaker, James McKeon, Nicki Behner, Cathy Barber, Carol Sinape, Barbara Krzyzek, Dr. Alonzo Plough, Kenneth Ray, Dr. Ben Sanders, Barbara Hanson, Andrew Murphy, and Michael Velasquez.

(3) The Court directs that this matter be referred to the Screening Committee for the Court's *pro bono* panel. The Committee shall review Plaintiff's remaining § 1983 civil-rights claims against Sergeant Stewart, Officer Helpenstell, and Officer Taylor and make its recommendation to the Court in accordance with the plan and rules for the *pro bono* panel as to whether or not an attorney will be selected to represent Plaintiff on a *pro bono* basis for the remainder of this litigation.

(4) The Clerk is directed to send copies of this Order to Plaintiff, to counsel for Defendant, and to the Honorable James P. Donohue.

IT IS SO ORDERED.

DATED this 27th day of April, 2006.

_____
Thomas S. Zilly
United States District Judge

ORDER  6–